UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | * | CASE NO.: 14-52615-LRC |
| | * | |
| CHERYL THOMAS MITCHELL | * | CHAPTER 13 |
| | * | |
| | * | |
| DEBTOR | * | |

### MOTION TO MODIFY MORTGAGE

COMES NOW the Debtor in the above-styled Chapter 13 case, and through counsel, files this "Motion to Modify Mortgage" by showing to this Honorable Court the following:

1.

This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1334, 151 and 157.

2.

This Court has proper venue for this matter pursuant to 28 U.S.C. Section 1409.

3.

This matter is a core proceeding as defined in 28 U.S.C. Section 157(b)(2)(D).

4.

The Debtors filed the petition for relief in the above-styled Chapter 13 case on February 6, 2014.

5.

The Debtor is seeking to modify her mortgage loan with Seterus from a 30 year fixed rate loan with a current interest rate of 6.625% to a 40 year fixed loan with an

interest rate of 4%. Debtor's monthly mortgage payment will go from $795 per month down to $690.66. This amount includes principal and interest at $452.16 and escrow in the amount of $238.50. (see attached Exhibit A)

6.

The Debtor has been approved for such modification. The Debtor shows that the modification will not jeopardize the Plan and is in the best interest of the estate and of creditors. Allowing the Debtor to modify her loan will make it more feasible for her to maintain her chapter 13 trustee payments and her monthly mortgage payments as the mortgage payments are considerably lower than her current mortgage payments.

WHEREFORE, Debtor prays:

    (a) that this Motion be filed, read and considered;

    (b) that this motion be granted; and,

    (c) that this honorable Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

___/s/_____
Nichole R. James, Georgia Bar No. 142699
Attorney for Debtor

Wright & James. PC
752 Moreland Avenue
Ste. 7
Atlanta, GA 30316
404-624-7447

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | * | CASE NO.: 14-52615-LRC |
| | * | |
| CHERYL THOMAS MITCHELL | * | CHAPTER 13 |
| | * | |
| | * | |
| DEBTOR | * | |

### NOTICE OF HEARING ON MOTION TO MODIFY MORTGAGE

**PLEASE TAKE NOTICE** that Cheryl Thomas Mitchell has filed a "Motion to Modify Mortgate".

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion to Modify Mortgage in **Courtroom 1204, U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia, 30303 at 1:45 p.m. on August 14, 2018.**

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in the bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate of service stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U.S, Bankruptcy, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. Your must also mail a copy of your response to the undersigned at the address below.

Dated: July 9, 2018

___/s/_____
Nichole R. James, Bar No.: 142699
Attorney for Debtor
Wright & James PC
752 Moreland Avenue
Ste. 7
Atlanta, GA 30316
404-624-7447

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | * | CASE NO.: 14-52615-LRC |
| | * | |
| CHERYL THOMAS MITCHELL | * | CHAPTER 13 |
| | * | |
| | * | |
| DEBTOR | * | |

### CERTIFICATE OF SERVICE

I the undersigned certify under penalty of perjury and on this day I served the following parties with a copy of the attached "Notice of Hearing on Motion to Modify Mortgage" and "Motion to Modify Mortgage" by placing true copies of same in the United States Mail with adequate postage affixed to insure delivery, addressed to:

Dated: July 9, 2018

\_\_\_/s/_____
Nichole R. James
Attorney for Debtor

Served:

Melissa J. Davey, Standing Ch 13 Trustee
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

Cheryl Thomas Mitchell
2550 Nevels Road
Atlanta, GA 30349

Seterus
P.O. Box 1077
Hartford, CT 06143

All Creditors on Attached Matrix

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113E-1<br>Case 14-52615-lrc<br>Northern District of Georgia<br>Atlanta<br>Wed Jul 11 10:11:02 EDT 2018 | Capital 1 Bank<br>Attn: Bankruptcy Dept.<br>Po Box 30285<br>Salt Lake City, UT 84130-0285 | Central Finl Control<br>Po Box 660873<br>Dallas, TX 75266-0873 |
| CitiMortgage<br>P.O. Box 6243<br>Sioux Falls, SD 57117-6243 | CitiMortgage, Inc.<br>P.O. Box 688971<br>Des Moines, IA 50368-8971 | CitiMortgage, Inc.<br>PO Box 6030<br>Sioux Falls SD 57117-6030 |
| Citimortgage Inc<br>Po Box 9438<br>Gaithersburg, MD 20898-9438 | Melissa J. Davey<br>Melissa J. Davey, Standing Ch 13 Trustee<br>Suite 200<br>260 Peachtree Street, NW<br>Atlanta, GA 30303-1236 | Dsnb Macys<br>9111 Duke Blvd<br>Mason, OH 45040-8999 |
| FORD MOTOR CREDIT COMPANY<br>C/O MACDOWELL & ASSOCIATES LTD.<br>P.O. BOX 450849<br>ATLANTA, GA 31145-0849 | Federal National Mortgage Association<br>Fannie Mae, creditor c/o Seterus, Inc.<br>PO Box 1047<br>Hartford, CT 06143-1047 | Ford Motor Credit<br>P.O. Box 6508<br>Mesa, AZ 85216-6508 |
| (p)FORD MOTOR CREDIT COMPANY<br>P O BOX 62180<br>COLORADO SPRINGS CO 80962-2180 | Andrew D. Goldberg<br>Rosicki, Rosicki & Associates, P.C.<br>Outsource Management<br>51 East Bethpage Road<br>Plainview, NY 11803-4224 | Laura Grifka<br>RCO Legal, P.S.<br>1587 Northeast Expressway<br>Atlanta, GA 30329-2401 |
| James B. Nutter & Co.<br>P.O. Box 10346<br>Kansas City, MO 64171-0346 | James B. Nutter & Company<br>4153 Broadway<br>Kansas City, MO 64111-2694 | MacDowell & Associates<br>P.O. Box 450840<br>Atlanta, GA 31145 |
| Travis E. Menk<br>Brock & Scott, PLLC<br>Suite 150<br>8757 Red Oak Blvd.<br>Charlotte, NC 28217-3977 | Cheryl Thomas Mitchell<br>2550 Nevels Road<br>Atlanta, GA 30349-4850 | David S. Perrie<br>Perrie & Associates, LLC<br>Suite 1170<br>100 Galleria Parkway<br>Atlanta, GA 30339-5954 |
| (p)PORTFOLIO RECOVERY ASSOCIATES LLC<br>PO BOX 41067<br>NORFOLK VA 23541-1067 | Seterus<br>P.O. Box 2008<br>Grand Rapids, MI 49501-2008 | Lisa B. Singer<br>Rosicki, Rosicki & Associates, P.C.<br>51 East Bethpage Road<br>Plainview, NY 11803-4224 |
| Mallory Velten<br>Brock & Scott, PLLC<br>4360 Chamblee Dunwoody Road<br>Suite 310<br>Atlanta, GA 30341-1056 | Nichole R. James Vickers<br>Wright & James, P.C.<br>Suite 7<br>752 Moreland Avenue<br>Atlanta, GA 30316-3859 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Ford Motor Credit Corporation              Portfolio Recovery Associates, LLC
Ford Motor Credit                          POB 41067
Po Box 6275                                Norfolk VA 23541
Dearborn, MI 48121
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)FEDERAL NATIONAL MORTGAGE ASSOCIATION        (u)Federal National Mortgage Association (Fan        (u)Seterus as servicer for Federal National M

```
End of Label Matrix
Mailable recipients    25
Bypassed recipients     3
Total                  28
```

MITCHELL, CHERYL
May 21, 2018
Loan number: 9268288

## SUMMARY OF YOUR MODIFIED MORTGAGE

**NEW/UNPAID PRINCIPAL BALANCE:** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **We may waive ALL late charges that have accrued and remain unpaid at the end of the trial period if you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments.**

**INTEREST RATE:** The interest rate on your modified loan will not be adjusted. As a result, the existing interest rate on your mortgage loan will be applied to your modified loan as noted in the attached Loan Modification Agreement.

**TERM EXTENSION:** We will extend the term of your mortgage to reduce your mortgage payment. This means we will spread your payments over a longer period.

**ESCROW ACCOUNT:** The terms of your Loan Modification Agreement require that you pay into an escrow account an amount sufficient to cover your property taxes, insurance premiums, and other required fees. Any prior waiver of escrows by your lender is no longer in effect. We will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that payments from your escrow account will adjust if your taxes, insurance premiums, and/or assessment amounts change, so the amount we must place in escrow will also adjust, as permitted by law. This means that your payments may change. Your initial escrow payment will be $238.50 and is included in the loan payment noted in the enclosed Loan Modification Agreement.

**ESCROW SHORTAGE:** We have determined that there is a shortage of funds in your escrow account in the amount of $681.33 due to the timing of your tax and insurance payments. **Please contact us if you wish to pay the total shortage now in a lump sum. Paying this amount now in a lump sum will reduce your new regularly scheduled mortgage payment.**

**PAYMENT TERMS:** The enclosed Loan Modification Agreement includes the principal and interest payment amounts for the life of your modified loan after the trial period.

**FEES:** There are no fees or other charges for this modification.

**LOAN MODIFICATION AGREEMENT:** Please read the enclosed Loan Modification Agreement carefully and make sure that you understand it. If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

"Exhibit A"

After Recording, Return To:

_____
_____
_____
_____

———————————————— [Space Above This Line For Recording Data] ————————————————

Collateral Address: 2550 NEVELS RD, ATLANTA GA 30349-0000

Loan Number: 9268288, Prepared by Servicer: Seterus, Inc., NMLS ID Number: 787641, Employee NMLS ID Number: 1598650, Investor Loan Number: 1703466390

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 21st day of May, 2018, between MITCHELL, CHERYL ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated December 07, 2006, and the Original unpaid principal balance: $136,000.00, and the Pre-Modification Principal Balance: $104,392.86, and recorded in Book or Liber 46081, at page(s) 591, Instrument Number 2007-0341707, of the County Records of Fulton and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
    2550 NEVELS RD, ATLANTA GA 30349-0000,
the real property described being set forth as follows:
    Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of July 01, 2018, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $108,187.06, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

MITCHELL, CHERYL  9268288  23221169
LOAN MODIFICATION AGREEMENT                        L790AQ.1                             Page 1 of 10

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from June 01, 2018. Borrower promises to make monthly payments of principal and interest of U.S. $452.16, beginning on the 1st day of July, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. If on June 01, 2058 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $238.50 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing July 01, 2018.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments

that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:
   (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and
   (b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:
   (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.
   (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.
   (f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement, which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.
   (h) MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary of record under the**

Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. 888.679.MERS.

8. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement, and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien, evidenced by the Security Instrument, under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

9. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

10. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

11. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

12. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

MITCHELL, CHERYL  9268288 23221169
LOAN MODIFICATION AGREEMENT                            L790AQ.1                            Page 5 of 10

In Witness Whereof, the Servicer and I have executed this Agreement.

_____    _____
Seterus, Inc.  Authorized Signer                                        Date

_____
Witness for Lender-

_____
Witness for Lender -

_____    _____
MITCHELL, CHERYL                                                        Date

_____
Witness -
(signature & printed name required)

_____
Witness -
(signature & printed name required)

Mortgage Electronic Registration Systems, Inc.
Nominee for Lender

MITCHELL, CHERYL  9268288 23221169
LOAN MODIFICATION AGREEMENT          L790AQ.1                Page 6 of 10

_____ [Space Below This Line For Acknowledgments] _____

State of **GEORGIA**                        )
County of _____   )

This instrument was acknowledged before me this _____ day of
_____, _____ by **MITCHELL, CHERYL**.

_____ Personally Known

_____ Produced Identification

Type and # of ID _____

_____
Signature of Notary

_____
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(Seal)

My Commission Expires: _____

State of Oregon

County of Washington

On _____, before me, _____, personally appeared _____,
Authorized Signer of Seterus, Inc., who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public
State of Oregon

My commission expires on:

Commission No.

MITCHELL, CHERYL  9268288  23221169
LOAN MODIFICATION AGREEMENT            L790AQ.1            Page 8 of 10

State of Oregon

County of Washington

On _____, before me, _____, personally appeared _____, Assistant Secretary for Mortgage Electronic Registration Systems, Inc., who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public
State of Oregon

My commission expires on:

Commission No.

Exhibit A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 132 OF THE 13TH DISTRICT, FULTON COUNTY, GEORGIA, CONTAINING 0.99 ACRES, MORE OR LESS, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE SOUTH SIDE OF NEVELS ROAD 1233 FEET WEST OF OLD NATIONAL HIGHWAY (HIGHWAY 279); RUNNING THENCE WEST ALONG THE SOUTH SIDE OF NEVELS ROAD 92 FEET; RUNNING THENCE SOUTH 473 FEET; RUNNING THENCE EAST 92 FEET; RUNNING THENCE NORTH 473 FEET TO THE SOUTH SIDE OF NEVELS ROAD AND THE POINT OF BEGINNING.